**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| GEORGIACARRY.ORG, INC., | ) | |
| and DAVID JAMES, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE NO. |
| | ) | |
| v. | ) | 4:14-CV-139-HLM |
| | ) | |
| U.S. ARMY CORPS OF | ) | |
| ENGINEERS and JOHN J. | ) | |
| CHYTKA, in his official capacity | ) | |
| as Commander, Mobile District, | ) | |
| U.S. Army Corps of Engineers, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................2

ARGUMENT ..................................................................................4

I.    The Court Should Dismiss Plaintiffs' Complaint for Failure to
      State a Claim on Which Relief Can Be Granted ..............................................4

      A.    The Second Amendment Right to Keep and Bear Arms ......................5

            1.    District of Columbia v. Heller, 554 U.S. 570
                  (2008) ..................................................................................5

            2.    GeorgiaCarry.Org., Inc. v. Georgia, 687 F.3d
                  1244 (11th Cir. 2012) ................................................................6

      B.    Because the Georgia Public Land Managed and
            Administered by the Corps Is a Sensitive Place Under
            Heller, the Corps Regulation Is Presumptively Lawful ......................7

      C.    Even if the Corps Regulation Implicates Plaintiffs'
            Second Amendment Rights, It Is Constitutional................................12

            1.    If the Regulation Affected Plaintiffs' Second
                  Amendment Rights, at Most, Intermediate
                  Scrutiny Would Be the Appropriate Level of
                  Review..................................................................................12

            2.    The Corps Regulation Satisfies Intermediate
                  Scrutiny ................................................................................15

II.   In Any Event, Review of This Case Should Be Limited to
      the Administrative Record............................................................................21

CONCLUSION ..................................................................................23

## INTRODUCTION

Plaintiffs claim that the Corps' regulation restricting the possession of firearms on Corps-managed lands, 36 C.F.R. § 327.13(a), violates the Second Amendment right of Plaintiff James because he wishes to arm himself when he visits such lands in Georgia.  On August 18, 2014, the Court denied Plaintiffs' motion for a preliminary injunction.  Order dated Aug. 18, 2014 (Dkt. 19) ("PI Order").  The Court held that Plaintiffs were unlikely to succeed on the merits of their claim under both parts of the two-prong test adopted by the Eleventh Circuit for addressing Second Amendment challenges to federal firearms restrictions in GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244 (11th Cir. 2012).  PI Order at 13-50.  For the same reasons identified in the Court's Order, the Court should dismiss Plaintiffs' complaint.

First, the Court found that the Corps regulation does not burden conduct falling within the scope of the Second Amendment's guarantee.  PI Order at 38. The Supreme Court made clear in District of Columbia v. Heller, 554 U.S. 570 (2008), that – however far the Second Amendment right extends – it does not extend to "sensitive places."  Id. at 626.  For the reasons detailed in the Court's Order, Corps-managed property is a sensitive place under Heller, and thus the Corps regulation is presumptively lawful.  PI Order at 17-38.  Second, out of an

1

abundance of caution, the Court evaluated the Corps regulation under intermediate scrutiny, and determined that the regulation passes constitutional muster.  Id. at 39-50.  For the reasons stated in the Court's Order, and as further explained below, the Court should dismiss this case for failure to state a claim.

## BACKGROUND

Like many other federal agencies, the Corps has long restricted the possession of loaded firearms on its property under its constitutional and statutory authority as property owner.  As the largest provider of federal outdoor recreation based on annual visitation, the Corps has a firm and longstanding commitment to providing violence-free recreational areas, and the Corps' firearms regulation forms an important part of that commitment.  The Corps receives millions of visitors per year to Corps-managed recreation areas located on water resource development projects that the agency administers.  The area located near Lake Allatoona, in northwest Georgia, receives over 6 million visitors per year.  Complaint ¶¶ 18, 20 (Dkt. 1) ("Compl.").[1]

Federal regulations govern the public use of Corps-managed water resource development projects.  See 36 C.F.R. pt. 327.  "It is the policy of the Secretary of the Army, acting through the Chief of Engineers, to manage the natural, cultural

---

[1] Any cited statements from Plaintiffs' complaint are assumed to be correct solely for purposes of this Motion.

and developed resources of each project in the public interest, providing the public

with safe and healthful recreational opportunities while protecting and enhancing

these resources."  Id. § 327.1(a).

To provide for "more effective recreation-resource management of lake and

reservoir projects," the Corps issued regulations in 1973.  38 Fed. Reg. 7,552,

7,552 (March 23, 1973).  As amended, the regulation entitled "Explosives,

firearms, other weapons and fireworks" provides:

(a)     The possession of loaded firearms, ammunition, loaded projectile
        firing devices, bows and arrows, crossbows, or other weapons is
        prohibited unless:
    (1)     In the possession of a Federal, state or local law enforcement
            officer;
    (2)     Being used for hunting or fishing as permitted under [36
            C.F.R.] § 327.8, with devices being unloaded when transported
            to, from or between hunting and fishing sites;
    (3)     Being used at authorized shooting ranges; or
    (4)     Written permission has been received from the District
            Commander.

(b)     Possession of explosives or explosive devices of any kind, including
        fireworks or other pyrotechnics, is prohibited unless written
        permission has been received from the District Commander.

36 C.F.R. § 327.13.

Plaintiff David James, a Georgia resident, "frequently camps and recreates

on Corps property and facilities at Lake Allatoona," a "Corps project and water

facility located in Northwest Georgia."  Compl. ¶¶ 17-18.  Plaintiff is a member of

3

GeorgiaCarry.Org, Inc., a non-profit corporation, which is also a named plaintiff.

Id. ¶ 4.  On June 12, 2014, Plaintiffs filed this case, contending that the application

of the Corps firearms regulation to Plaintiff James while visiting the Lake

Allatoona project violates the Second Amendment.  See id. ¶ 35.  On August 18,

2014, the Court denied Plaintiffs' motion for a preliminary injunction.  PI Order at

57.

## ARGUMENT

### I.     The Court Should Dismiss Plaintiffs' Complaint for Failure to State a Claim on Which Relief Can Be Granted.

Plaintiffs contend that the Corps' enforcement of its firearms regulation

against Plaintiff James violates the Second Amendment.  Compl. ¶ 35.  When

evaluating Second Amendment claims, courts begin by asking whether the

challenged law regulates conduct that falls within the scope of the Second

Amendment's protection.  As explained below, the Corps regulation does not,

because it restricts the carrying of firearms in sensitive places.  In any event, even

if the regulation did implicate conduct protected by the Second Amendment, it

easily survives the intermediate scrutiny test employed by numerous courts

evaluating other types of firearms regulations.  Thus, the Court should dismiss this

case because Plaintiffs have not stated a claim on which this Court can grant relief.

4

### A.     The Second Amendment Right to Keep and Bear Arms

### 1.     <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008)

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008), the Supreme Court held that a "ban on handgun possession in the home" and "prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense" violated the Second Amendment.  <u>Id.</u> at 635.  But the Court repeatedly emphasized that "the right was not unlimited."  <u>Id.</u> at 595 ("[W]e do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak *for any purpose*.") (emphases in original).  The Court noted that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  <u>Id.</u> at 635.  <u>Heller</u> made clear that laws forbidding firearms in sensitive places, along with other regulatory restrictions on the possession of firearms and conditions on the commercial sale of arms, do not generally violate the Constitution.  The Court explained: "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the

possession of firearms by felons and the mentally ill, or *laws forbidding the*

*carrying of firearms in sensitive places* such as schools and government buildings,

or laws imposing conditions and qualifications on the commercial sale of arms."

Id. at 626-27 (emphasis added).  And the Court specifically noted that those

"presumptively lawful regulatory measures" were merely examples, and that the

list "does not purport to be exhaustive."  Id. at 627 n.26.

### 2.    GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244 (11th Cir. 2012)

Interpreting Heller in the context of a Second Amendment challenge to a

Georgia law restricting the possession of firearms in a place of worship, the

Eleventh Circuit stated that in analyzing Second Amendment claims, "[l]ike our

sister circuits, we believe a two-step inquiry is appropriate: first, we ask if the

restricted activity is protected by the Second Amendment in the first place; and

then, if necessary, we would apply the appropriate level of scrutiny."

GeorgiaCarry.Org v. Georgia, 687 F.3d 1244, 1260 n.34 (11th Cir. 2012), cert.

denied, 133 S. Ct. 856 (2013).  In upholding the Georgia law, the Eleventh Circuit

emphasized the fact that in Heller, the Court "went to great lengths to emphasize

the special place that the home – an individual's *private property* – occupies in our

society."  Id. at 1259 (emphasis added) (citing 554 U.S. at 628-29).

**B.    Because the Georgia Public Land Managed and Administered by the Corps Is a Sensitive Place Under <u>Heller</u>, the Corps Regulation Is Presumptively Lawful.**

Because the Corps regulation is a "law[] forbidding the carrying of firearms in [a] sensitive place[]," <u>Heller</u>, 554 U.S. at 626, it addresses conduct that falls outside the scope of the Second Amendment's protection.  <u>See</u> PI Order at 17-38; <u>see</u> <u>also</u> <u>United States v. Marzzarella</u>, 614 F.3d 85, 91-92 (3d Cir. 2010) (concluding, after extensive analysis, that the presumptively lawful regulatory measures identified in <u>Heller</u> concern "exceptions to the right to bear arms" to which "the Second Amendment affords no protection"), <u>cert.</u> <u>denied</u>, 131 S. Ct. 958 (2011).

As this Court has recognized, it is extremely improbable that "the framers of the Constitution would have recognized a civilian's right to carry firearms on property owned and operated by the United States Military, especially when such property contained infrastructure products central to our national security and well being."  PI Order at 25-26.  "[T]he pre-existing right encompassed by the Second Amendment was not free from locational restrictions."  PI Order at 18 n.4 (citation omitted).  Rather, such restrictions are among the "traditional restrictions" that tend "to show the scope of the right."  <u>McDonald v. City of Chicago</u>, 130 S. Ct. 3020, 3056 (2010) (Scalia, J., concurring).  "[W]hen the fledgling republic adopted the

Second Amendment, an expectation of sensible gun safety regulation was woven into the tapestry of the guarantee." Nat'l Rifle Ass'n v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 700 F.3d 185, 200 (5th Cir. 2012), cert. denied, 134 S. Ct. 1364 (2014). "Since even before the Revolution, gun use and gun control have been inextricably intertwined" and "[t]he historical record shows that gun safety regulation was commonplace in the colonies," including "laws prohibiting the use of firearms on certain occasions and in *certain places*." Id. (emphasis added).

The Corps regulation represents one such permissible firearms restriction. The Corps remains "an integral part of the United States Armed Forces," and "the existence of [its] 'recreational facilities' is merely a byproduct of the sensitive dam construction projects nearby." PI Order at 23, 24 (citations omitted). The Court may take judicial notice that the Corps land at issue here includes the Allatoona Dam.[2] The U.S. Department of Homeland Security's ("DHS") Office of Inspector

---

[2] Documents that are properly the subject of judicial notice may be considered together with the complaint when deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Lowman v. City of Riviera Beach, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013). The Court "may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the [Court's] territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may "take[] judicial notice of facts regarding Lake Allatoona from the [Corps'] website." See Moore v. Traina Enters., Inc., __ F. Supp. 2d __, No. 13-1748, 2013

General has characterized "[d]ams and related structures," including those operated and managed by the Corps, as "critical infrastructure," given that "one catastrophic failure at some locations could affect populations exceeding 100,000 and have economic consequences surpassing $10 billion."  DHS Office of Inspector General, DHS Risk Assessment Efforts in the Dams Sector (2011), at 1, 2 (attached as Ex. 1); see also Congressional Research Service, Firearms at Army Corps Water Resources Projects: Proposed Legislation and Issues for Congress (Sept. 4, 2013) ("CRS Report"), at 3 ("The Corps and the U.S. Department of Homeland Security regard some Corps infrastructure as critical to homeland security and the economy; these structures include multi-purpose dams and major navigation locks.") (footnote omitted) (attached as Ex. 2).[3]  Many of these Corps-

---

WL 8335683, at *4 n.4 (N.D. Ga. Dec. 13, 2013) (citing Alabama–Coosa–Tallapoosa River Basin Water Control Manual, Appendix A (2013), *available at* http://www.sam.usace.army.mil/Portals/46/docs/planning_environmental/act/docs/New/ACT%20Master%20Manual_March%2013.pdf).

[3] Defendants respectfully request that the Court take judicial notice of the cited statements from the CRS Report and of the fact that DHS has characterized dams and related structures as "critical infrastructure," under Fed. R. Evid. 201.  A court may take judicial notice of undisputed matters of public record when deciding a motion to dismiss under Rule 12(b)(6).  Universal Express, Inc. v. SEC, 177 Fed. App'x 52, 53-54 (11th Cir. 2006).

managed facilities "require additional protection measures in times of heightened
homeland security concerns."  CRS Report at 3.[4]

Additionally, the Eleventh Circuit's only post-Heller opinion addressing the
scope of the Heller right beyond the home is instructive here.  In
GeorgiaCarry.Org, that Court "found that no pre-existing right to carry firearms on
the property of others existed, so the law did not infringe upon Second Amendment
rights and no constitutional scrutiny need be applied."  PI Order at 28 (citing
GeorgiaCarry.Org, 687 F.3d at 1266).  And it is not necessary to equate public
lands with private property to recognize an analogy between a person visiting land
owned by a private third party and a visitor on land owned by a public third party.
Indeed, the Supreme Court has "stated on several occasions, the State, no less than
a private owner of property, has power to preserve the property under its control
for the use to which it is lawfully dedicated."  Perry Educ. Ass'n v. Perry Local
Educators' Ass'n, 460 U.S. 37, 46 (1983).  And the fact that the Corps "could
exclude civilians from its property altogether" makes the Eleventh Circuit's

---

[4] Several other courts have upheld restrictions on firearms in sensitive places,
including public areas used for recreational purposes.  See Warden v. Nickels, 697
F. Supp. 2d 1221, 1224 (W.D. Wash. 2010) (park facilities); Embody v. Ward, No.
10-126, 2011 WL 2971055, at *10-11 (M.D. Tenn. July 20, 2011) (public park),
aff'd on other grounds, 695 F.3d 577 (6th Cir. 2012); United States v.
Masciandaro, 648 F. Supp. 2d 779, 790 (E.D. Va. 2009) (motor vehicles on
national park land), aff'd on other grounds, 638 F.3d 458 (4th Cir. 2011).

"proclamation that private property owners may exclude guns from their property

. . . relevant to the case at hand."  PI Order at 29, 30 (citation omitted).  It would be

counterintuitive to conclude that though the Corps "may exclude civilians from its

property altogether, if it chooses to allow them access, it must also allow them to

carry firearms."  Id. at 30 (footnote omitted).  Moreover, that conditions under

which a property owner permits a visitor access to its lands may affect the visitor's

constitutional rights does not change the analysis.  See Cornelius v. NAACP Legal

Def. & Educ. Fund, 473 U.S. 788, 799-800 (1985) ("Even protected speech is not

equally permissible in all places and at all times.  Nothing in the Constitution

requires the Government freely to grant access to all who wish to exercise their

right to free speech on every type of Government property without regard to the

nature of the property or to the disruption that might be caused by the speaker's

activities.").  As an owner of the land in question, the Corps has more leeway in

setting conditions for the use of that land than a governmental body acting in its

regulatory capacity.

   In sum, "there is no reason to doubt that the [Corps'] Regulation, which

restricts the use of firearms on military property nearby sensitive infrastructure

projects, does not fall squarely into the existing 'laws forbidding the carrying of

firearms in sensitive places' referenced in Heller."  PI Order at 27.  The Corps

11

firearms regulation is thus "presumptively lawful," 554 U.S. at 626-27, and the Court should uphold the regulation on that basis.

   **C.   Even if the Corps Regulation Implicates Plaintiffs' Second Amendment Rights, It Is Constitutional.**

         **1.   If the Regulation Affected Plaintiffs' Second Amendment Rights, at Most, Intermediate Scrutiny Would Be the Appropriate Level of Review.**

"As laws burdening protected conduct under the First Amendment are susceptible to different levels of scrutiny, similarly the Second Amendment can trigger more than one particular standard of scrutiny, depending, at least in part, upon the type of law challenged and the type of Second Amendment restriction at issue." Drake v. Filko, 724 F.3d 426, 435 (3d Cir. 2013) (citations and internal punctuation omitted), cert. denied, 134 S. Ct. 2134 (2014).  The Court has held that even if the Corps regulation affects conduct protected by the Second Amendment, any constitutional means-end analysis of the regulation should apply no more than intermediate scrutiny for two key reasons.  PI Order at 38-45.

First, because the Corps was acting in its proprietary capacity when it enacted the challenged regulation, its action is subject to "the lowest possible level of scrutiny."  Id. at 41-43.  Second, even assuming that the Corps regulation affects rights protected by the Second Amendment, the voluntary nature of Plaintiffs' presence on Corps property limits the extent to which those rights are affected.  Id.

12

at 43-45.  See also United States v. DeCastro, 682 F.3d 160, 166 (2d Cir. 2012)

("[H]eightened scrutiny is triggered only by those restrictions that (like the

complete prohibition on handguns struck down in Heller) operate as a substantial

burden on the ability of law-abiding citizens to possess and use a firearm for self-

defense (or for other lawful purposes)."), cert. denied, 133 S. Ct. 838 (2013).

   The Corps promulgated the regulation here under its constitutional and

statutory authority to issue "such rules and regulations as the Secretary of the

Army may deem necessary" to administer the public use of park and recreational

facilities at water resource development projects under the Army's control.  16

U.S.C. § 460d.  This authority includes the ability to "prohibit[] any 'use' of the

lands . . . which is determined by the Secretary of the Army to be 'contrary to the

public interest."  South Dakota v. Bourland, 508 U.S. 679, 690 (1993).  "Beyond

doubt, the Property Clause authorizes the enactment and enforcement of

regulations which . . . are designed to maintain safety and order on government

property."  United States v. Gliatta, 580 F.2d 156, 160 (5th Cir. 1978).[5]

   The Corps regulation is particularly reasonable in light of the fact that when

it manages public land, the United States "exercises the powers both of a proprietor

_____

[5] Opinions of the Fifth Circuit issued prior to October 1, 1981, the date marking the
creation of the Eleventh Circuit, are binding precedent on this Court.  Bonner v.
City of Prichard. Ala., 661 F.2d 1206, 1209-11 (11th Cir. 1981) (en banc).

and of a legislature." <u>Kleppe v. New Mexico</u>, 426 U.S. 529, 540 (1976) (citations omitted); <u>see</u> <u>also</u> <u>id.</u> at 539 (noting that the Supreme Court has "repeatedly observed that the power over the public land . . . entrusted to Congress is without limitations") (citing cases) (internal punctuation omitted); <u>Light v. United States</u>, 220 U.S. 523, 536-37 (1911) ("The United States can prohibit absolutely or fix the terms on which its property may be used . . . . These are rights incident to proprietorship, to say nothing of the power of the United States as a sovereign over the property belonging to it."). "The government, after all, is invested with 'plenary power' to protect the public from danger on federal lands under the Property Clause." <u>United States v. Masciandaro</u>, 638 F.3d 458, 473 (4th Cir. 2011), <u>cert.</u> <u>denied</u>, 132 S. Ct. 756 (2011); <u>see</u> <u>also</u> <u>id.</u> (upholding regulation prohibiting carrying or possession of loaded handguns in a motor vehicle in a national park against Second Amendment challenge, and noting government's "substantial interest in providing for the safety of individuals who visit and make use of the national parks").

In sum, even if the Corps regulation did affect conduct protected by the Second Amendment, and the Court applies a constitutional means-end analysis, it should apply no more than intermediate scrutiny.

14

## 2.    The Corps Regulation Satisfies Intermediate Scrutiny.

"Under an intermediate scrutiny standard, a regulation 'may be upheld so long as it is substantially related to an important governmental objective.'" GeorgiaCarry.Org, 764 F. Supp. 2d at 1318 (quoting Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1244 (11th Cir. 2003)). "The fit between the government's objective and regulation need not be 'necessarily perfect, but reasonable'; the government need 'not necessarily employ the least restrictive means.'" Id. (quoting Bd. of Trustees of State Univ. v. Fox, 492 U.S. 469, 480 (1989)) (internal punctuation omitted).

Under intermediate scrutiny analysis, in order to advance its compelling interests in combating crime and protecting public safety, policymakers may need to make "predictive judgments" about the risk of dangerous behavior.  Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 665 (1994).  Such judgments are entitled to "substantial deference" by the courts.  Id.  In addition, "[s]ound policymaking often requires [policymakers] to forecast future events and to anticipate the likely impact of these events based on deductions and inferences for which complete empirical support may be unavailable."  Id.  Furthermore, under intermediate scrutiny, the government "does not bear the burden of providing evidence that

15

rules out every theory . . . inconsistent with its own." <u>City of Los Angeles v. Alameda Books, Inc.</u>, 535 U.S. 425, 437 (2002) (plurality opinion).

Moreover, "[t]he Constitution does not mandate a specific method by which the government must satisfy its burden under heightened judicial scrutiny." <u>United States v. Carter</u>, 669 F.3d 411, 418 (4th Cir. 2012).  As the Supreme Court has explained, the "quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised." <u>Nixon v. Shrink Missouri Gov't PAC</u>, 528 U.S. 377, 391 (2000).  The Court has upheld restrictions on speech, even under a strict scrutiny standard of review, in some cases relying "solely on history, consensus, and 'simple common sense.'" <u>Florida Bar v. Went For It, Inc.</u>, 515 U.S. 618, 628 (1995) (citations omitted); <u>see</u> <u>also</u> <u>Milavetz, Gallop & Milavetz v. United States</u>, 130 S. Ct. 1324, 1340 (2010) (rejecting notion that government must adduce evidence to justify restriction on speech and noting "[w]hen the possibility of deception is as self-evident as it is in this case, we need not require the State to conduct a survey of the public before it may determine that the advertisement had a tendency to mislead") (internal alterations and citations omitted).  The Corps regulation must only satisfy this intermediate level of scrutiny and, as set forth below, it does so.

16

Here, the Corps undoubtedly has an important – indeed, compelling –
interest in promoting order and public safety on the land it manages, and in
protecting visitors from the risk of firearm violence.  The Supreme Court has stated
repeatedly that "[t]he government's interest in preventing crime . . . is both
legitimate and compelling."  United States v. Salerno, 481 U.S. 739, 749 (1987)
(citation omitted); see also Masciandaro, 638 F.3d at 473 (government has a
substantial, even compelling, interest in "providing for the safety of individuals
who visit and make use of the national parks," which include "area[s] where large
numbers of people, including children, congregate for recreation").  Additionally,
the Corps has an important interest in protecting the safety of critical infrastructure
located on its lands, such as the Allatoona Dam.

The Corps' justification for this important regulation is neither novel nor
implausible.  Although Congress has provided the Corps with the authority to
regulate conduct at Corps-managed projects (including Lake Allatoona), it has not
provided the Corps with authority to perform many typical law enforcement
functions, including carrying firearms, making arrests, or executing search
warrants.  CRS Report at 4.  Rather, full police power at Corps projects, including
the ability to enforce state and local laws and to place persons under arrest, is
exercised solely by state and local authorities.  Id.  The Corps lacks the authority to

17

allow these state and local authorities to enforce federal laws or regulations at Corps-managed projects, including federal firearms laws.  Id.  Consequently, in order to fulfill its mission of "manag[ing] the natural, cultural, and developed resources of each project in the public interest, [and] providing the public with safe and healthful recreational opportunities," 36 C.F.R. § 327.1(a), "[p]art of the way that the Corps has maintained public safety and infrastructure security at its projects with this limited law enforcement authority has been to restrict the public's authority to carry loaded firearms."  CRS Report at 4.

        But these restrictions are limited in scope.  The Corps permits visitors to carry unloaded firearms on Corps-managed lands, and to possess loaded firearms when the District Commander has provided written permission, or when using them in areas specifically designated for hunting or target shooting.  36 C.F.R. § 327.13(a).  The Corps regulation is thus similar to other "place" regulations on firearms possession upheld against Second Amendment challenges, including by courts in this Circuit.  See GeorgiaCarry.Org, Inc. v. Georgia, 764 F. Supp. 2d 1306, 1316-20 (M.D. Ga. 2011) (upholding, under intermediate scrutiny, state law prohibiting possessing of firearms in places of worship), aff'd on other grounds, 687 F.3d 1244 (11th Cir. 2012).

18

The Corps regulation does not impose novel restrictions; rather, it is similar to other federal statutes and regulations that restrict the carrying of firearms on government property.  Under 18 U.S.C. §§ 930(a) and (d)(3), most individuals are barred from possessing a "firearm or other dangerous weapon in a Federal facility," except for "lawful carrying of firearms or other dangerous weapons . . . incident to hunting or other lawful purposes."  Similar to 18 U.S.C. § 930, the Corps regulation permits the carrying of firearms incident to hunting or fishing (including permitting the carrying of unloaded firearms when being transported to, from, or between specifically-designated hunting and fishing sites).  36 C.F.R. § 327.13(a)(2).  Section 930 allows for the prohibition of firearms in any "Federal facility," as well as on the grounds "appurtenant to such building."  See 18 U.S.C. § 930(f) ("Nothing in this section limits the power of a court of the United States to punish for contempt or to promulgate rules or orders regulating, restricting, or prohibiting the possession of weapons within any building housing such court or any of its proceedings, or upon *any grounds appurtenant to such building*.") (emphasis added).  Additionally, civilians who are legally authorized to possess a firearm when visiting certain U.S. Army facilities in Georgia for recreational hunting and target shooting must carry the firearm unloaded, and not concealed,

19

except when they are actually engaged in hunting or target shooting.  <u>See</u> 32

C.F.R. §§ 552.103 (Fort Stewart, Georgia), 552.129 (Fort Gordon, Georgia).[6]

The Corps enacted the regulation at issue here to protect the safety of

individuals who recreate on the public land owned and administered by the U.S.

Army.  For the reasons stated above, the Corps regulation substantially relates to

the indisputably important government interest of protecting the public and

reducing violent crime.  It therefore satisfies the requirements of intermediate

scrutiny analysis.

---

[6] <u>See</u> <u>also</u>, <u>e.g.</u>, 32 C.F.R. §§ 1903.1, 1903.10 (Central Intelligence Agency)
(prohibiting "[k]nowingly possessing or causing to be present a weapon on an
Agency installation," including "incident to hunting or other lawful purposes,"
defined as "property within the Agency Headquarters Compound and the property
controlled and occupied by the Federal Highway Administration located
immediately adjacent to such Compound, and property within any other Agency
installation and protected property (i.e., property owned, leased, or otherwise
controlled by the Central Intelligence Agency")); 32 C.F.R. §§ 234.1, 234.10
(Department of Defense) (prohibiting "possessing, carrying, or using" a weapon
while on the "Pentagon Reservation," defined as "Area of land and improvements
thereon . . . includ[ing] all roadways, walkways, waterways, and all areas
designated for the parking of vehicles"); 31 C.F.R. § 407.13 (Department of
Treasury) ("No person while on the property shall carry firearms, [or] other
dangerous or deadly weapons, or explosives, either openly or concealed, except for
official purposes."); 38 C.F.R. § 1.218(a)(13) (Department of Veterans Affairs)
("No person while on property shall carry firearms, other dangerous or deadly
weapons, or explosives, either openly or concealed, except for official purposes.");
36 C.F.R. § 504.14 (Smithsonian Institution Building and Grounds) ("No person
while on the premises shall carry firearms, other dangerous or deadly weapons, or
explosives, either openly or concealed, except for official purposes.").

**II.     In Any Event, Review of This Case Should Be Limited to the Administrative Record.**

Additionally, even if the Court were to deny Defendants' motion to dismiss, review on the merits should be limited to the administrative record that will be submitted by the Corps, and no extra-record discovery should be permitted.

Plaintiffs cannot maintain a private right of action directly under the Second Amendment against Defendants because sovereign immunity bars such an action. See United States v. Timmons, 672 F.2d 1373, 1380 (11th Cir. 1982) ("Defendants' [counter]claims  based directly on Fifth Amendment violations are likewise barred under the doctrine of sovereign immunity."); Salomone v. United States, No. 08-1574, 2009 WL 2957279, at *4 (N.D. Ga. Sept. 15, 2009) ("[T]here is absolutely no authority supporting plaintiff's claim that the United States waived sovereign immunity by enacting the Constitution itself."); see also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 410 (1971) (as to Fourth Amendment violations, "[h]owever desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit").  The only waiver of federal sovereign immunity that could apply to Plaintiffs' claim for relief under the Second Amendment is the waiver provided under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA").  See id. § 702 (waiving sovereign immunity for

21

federal claims seeking relief other than money damages against federal agencies and federal officials sued in their official capacities).  And the only applicable cause of action for Plaintiffs' claim appears in Section 704 of the APA.  See id. § 704 ("[F]inal agency action for which there is no other adequate remedy in a court [is] subject to judicial review.").

Since the APA supplies the only applicable cause of action and sovereign immunity waiver for Plaintiffs' claims, if the Court were to deny Defendants' motion to dismiss, judicial review of Plaintiffs' claims would be limited to review of the administrative record.  See 5 U.S.C. § 706 (in making its determinations, "the court shall review the whole record or those parts of it cited by a party. . ."); Camp v. Pitts, 411 U.S. 138, 142 (1973) (under the APA standard of review, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").  "[T]he general rule, applicable across the board to judicial review of administrative action . . . , is that the court may not go outside the administrative record." Najjar v. Ashcroft, 257 F.3d 1262, 1278 (11th Cir. 2001) (citation and internal quotation marks omitted); see also Alabama-Tombigbee Rivers Coalition v. Kempthorne, 477 F.3d 1250, 1262 (11th Cir. 2007) (under the APA, "[t]he focal point for judicial review of an administrative agency's action should be the administrative

22

record") (citation omitted); <u>P.E.A.C.H., Inc. v. U.S. Army Corps of Engineers</u>, 87

F.3d 1242, 1246 (11th Cir. 1996) (when conducting APA review, the "task of the

reviewing court is to apply the appropriate . . . standard of review . . . to the agency

decision based on the record the agency presents to the reviewing court") (citation

omitted).

## CONCLUSION

The Corps regulation is a "presumptively lawful" prohibition on "the

carrying of firearms in sensitive places," as described in <u>Heller</u>, 554 U.S. at 626.

The regulation thus does not burden conduct that is protected by the Second

Amendment and would pass muster under any level of constitutional scrutiny in

any event.  The Court should thus dismiss Plaintiffs' complaint for failure to state a

claim.

Dated:  August 22, 2014                Respectfully submitted,

Of Counsel                             STUART F. DELERY
                                       Assistant Attorney General

SALLY QUILLIAN YATES
United States Attorney
LORI BERANEK                            _/s/ Daniel Riess_____
Assistant United States Attorney       DIANE KELLEHER
600 Richard B. Russell Federal Building Assistant Branch Director
75 Spring Street, S.W.                 DANIEL RIESS
Atlanta, Georgia 30303                 Trial Attorney
Lori.Beranek@usdoj.gov                 U.S. Department of Justice
                                       Civil Division, Rm. 6122
                                       20 Massachusetts Avenue, NW

Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

GEORGIACARRY.ORG, INC., )
and DAVID JAMES, )
 )
  Plaintiffs, ) CIVIL ACTION FILE NO.
 )
 v. ) 4:14-CV-139-HLM
 )
U.S. ARMY CORPS OF )
ENGINEERS and JOHN J. )
CHYTKA, in his official capacity )
as Commander, Mobile District, )
U.S. Army Corps of Engineers, )
 )
  Defendants. )

## CERTIFICATE OF COMPLIANCE

I certify that the documents to which this certificate is attached have been prepared with one of the font and point selections approved by the Court in Local Rule 5.1B for documents prepared by computer.

/s/ Daniel Riess
DANIEL RIESS