# EXHIBIT 2



# Firearms at Army Corps Water Resources Projects: Proposed Legislation and Issues for Congress

Nicole T. Carter
Specialist in Natural Resources Policy

September 4, 2013

Congressional Research Service

7-5700
www.crs.gov
R42602

**CRS Report for Congress**
*Prepared for Members and Committees of Congress*

# Summary

As part of its civil works mission, the U.S. Army Corps of Engineers manages water resource projects. Areas behind and below Corps dams, and Corps navigation locks and their pools, are popular recreation sites, attracting 370 million visits annually. Corps projects include some of the most densely used federal recreation sites. Currently, 36 C.F.R. Section 327 sets out the regulations for public use of Corps projects. Section 327.13 generally prohibits possession of loaded firearms by private (i.e., non-law enforcement) individuals at Corps-administered projects unless they are being used for hunting at designated sites (with devices required to be unloaded while transported to and from the sites) or at authorized shooting ranges. The regulation applies at projects regardless of their location in states allowing open or concealed carry of loaded firearms.

Proposed legislation—H.R. 2046, the Recreational Lands Self-Defense Act; Section 113 of H.R. 2609, the Energy and Water Development and Related Agencies Appropriations Act of FY2014 (which are all substantively similar); Section 103 of S. 1335, the Sportsmen's Act; and an amendment proposed, but not adopted, during Senate floor consideration of S. 601, the Water Resources Development Act—would bar the Secretary of the Army from promulgating or enforcing regulations that prohibit individuals from possessing firearms (including assembled or functional firearms) at Corps projects. The proposed language would require firearms possession to comply with state law. Supporters see it as addressing a patchwork of regulations restricting firearms on federal lands, as providing consistency for open and concealed firearms possession within a state, and as facilitating recreational shooting and self-defense. They argue that enactment would result in Corps policies consistent with Section 512 of P.L. 111-24, which made it legal for individuals to possess firearms at National Park Service (NPS) and National Wildlife Refuge System (NWRS) units of the Department of the Interior (DOI). Other stakeholders are concerned that the legislation as proposed may produce unintended public safety and infrastructure security issues.

The issue for Congress is not only possession and use of loaded firearms but also maintaining public safety and infrastructure security at Corps projects.

- *Critical facilities security*: Proposed legislation does not explicitly provide authority to restrict firearms at Corps facilities (e.g., dams) or in specifically designated areas.

- *Public safety and law enforcement*: No armed federal law enforcement officers are commissioned for public safety and security purposes at Corps projects. Corps rangers issue citations for regulatory violations and are not allowed to carry firearms. Most law enforcement is provided by local and state personnel.

A safety, security, and cost and benefit assessment related to altering firearms possession and use at Corps projects has not been performed. DOI's Bureau of Reclamation is faced with similar safety and security issues at its water resource projects. It allows possession of firearms on Reclamation lands and waterbodies (e.g., reservoirs behind dams) when such possession complies with federal, state, and local law; hunting is similarly allowed unless an area has been closed for public use or has been designated as a special use area. Firearms are restricted at Reclamation facilities (e.g., dams and buildings). DOI and Reclamation use multiple authorities and mechanisms to provide for armed and unarmed law enforcement and public safety and security.

# Contents

Current and Proposed Corps Firearms Policy ................................................................................... 1
　Public Use and Access at Corps Projects .................................................................................... 1
　Current Corps Firearms and Hunting Regulations ..................................................................... 2
　Proposed Corps Firearms Legislation ......................................................................................... 3
Corps Firearms Policy and Related Security and Safety Issues ....................................................... 4
　Public Access to Critical Facilities ............................................................................................. 4
　Law Enforcement Authority ....................................................................................................... 4
　Economic Costs and Benefits ..................................................................................................... 5
Comparison with Reclamation Firearms Policies ............................................................................ 6
Conclusion ........................................................................................................................................ 8

# Tables

Table 1. Current and Proposed Firearms Regulations and Related Public Access and Law
　Enforcement Authorities for Corps and Reclamation Projects ..................................................... 7

# Contacts

Author Contact Information ............................................................................................................. 8

# Current and Proposed Corps Firearms Policy

The U.S. Army Corps of Engineers manages numerous water resource projects, such as dams and locks, across the United States. Many of these projects include facilities critical to managing floodwaters, supporting navigation, and producing hydropower. Many of these projects also are popular recreation sites. Current Corps regulations prohibit loaded firearms by private individuals at Corps projects unless they will be used for hunting or at designated shooting ranges. The regulation applies at Corps projects regardless of their location in states allowing open or concealed carry of loaded firearms.[1]

Legislation has been introduced to ban promulgation and enforcement of regulations that prohibit private individuals from possessing firearms (including assembled or functional firearms) at a Corps project. Congress has enacted similar language to end firearms restrictions on other federal lands. This report examines the potential extension of these policies to Corps projects. It discusses the current regulations, proposed legislation, and firearms-related safety and security issues at Corps projects. The report also compares the Corps' regulations with regulations and practices of the Department of the Interior's (DOI's) Bureau of Reclamation, which also operates water resources projects with significant recreation.

The Corps firearms regulations and their enforcement were the subject of a lawsuit filed in August 2013.[2] CRS found no data on the frequency with which the Corps issues citations or otherwise enforces its firearms restrictions.

## Public Use and Access at Corps Projects

Most Corps water resources projects are constructed primarily to produce economic and public safety benefits through promoting navigation and reducing exposure to flood waters. Congress, in multiple laws, has also provided the Corps with authorities to support other activities at its projects. Consequently, Corps projects such as dams are often multi-purpose. That is, they produce hydroelectric power and may store water for municipal, industrial, and agricultural use as well as provide navigation and flood damage reduction. Congress also has provided the Corps with authority to support recreation at its projects.[3]

In carrying out its water resources mission, the Corps is responsible for 11.7 million acres of land and waters, including 422 lake and river projects with recreation, 95,000 campsites, 6,500 miles of trails, and 3,522 boat launches. Corps projects provide 33% of U.S. freshwater available for lake fishing.[4] Some Corps lands and waters are open for hunting, and there are a small number of

---

[1] For more information on concealed carry, see CRS Report R42099, *Federal Laws and Legislation on Carrying Concealed Firearms: An Overview*, by Vivian S. Chu. For more information on gun control legislation, see CRS Report R42987, *Gun Control Proposals in the 113th Congress: Universal Background Checks, Gun Trafficking, and Military Style Firearms*, by William J. Krouse.

[2] More information on the case, Morris et al v. U.S. Army Corps of Engineers et al, can be found at http://ia800902.us.archive.org/4/items/gov.uscourts.idd.32180/gov.uscourts.idd.32180.docket.html.

[3] Section 4 of the Flood Control Act of 1944 (P.L. 78-534), as amended; Federal Water Project Recreation Act, 1965, (P.L. 89-72), as amended; §103(c)(4) and §103(e) of Water Resources Development Act of 1986 (P.L. 99-662); §2804 of Reclamation Projects Authorization and Adjustments Act of 1992 (P.L. 102-575).

[4] Army Corps of Engineers, *Information Paper: Civil Works Program Statistics*, 2010.

authorized shooting ranges. Corps projects receive 370 million recreational visits annually, making its projects the most visited of any single federal agency's sites.[5] One reason for the high visitation is close proximity to population centers: roughly 80% of Corps recreation areas are within 50 miles of an urban area. Examples of Corps projects with significant public use are reservoirs at multi-purpose dams (e.g., Lake Lanier (GA), Lake Texoma (OK and TX), and Missouri River mainstem dams) and navigation locks.

## Current Corps Firearms and Hunting Regulations

Currently, 36 C.F.R. Section 327 sets out the regulations for public use of Corps projects. Section 327.13 prohibits private (i.e., non-law enforcement) individuals from possessing loaded firearms, ammunition, loaded projectile firing devices, bows and arrows, crossbows, or other weapons at Corps-administered water resource projects, unless they are being used

- for hunting (with devices unloaded when being transported to hunting sites),
- at authorized shooting ranges, or
- with written permission of the Corps District Commander.

Under these regulations, the firearms are to remain unloaded in recreation areas such as campgrounds. The regulation applies at projects regardless of their location in states allowing open or concealed carry of loaded firearms. The Corps enforces the regulations on land and waters that it owns in fee; it does not enforce them on floodways under easement or on levees that are not on fee land. Corps regulations currently do not address discharge of firearms at Corps projects; that is, the regulations are related to possession, not use of the firearm.

The regulations for hunting at Corps projects are set out in a separate section, 36 C.F.R. Section 8, which states that "hunting is permitted except in areas and during periods where prohibited by the District Commander" and "all applicable Federal, State and local laws regulating these activities apply on project lands and waters, and shall be regulated by authorized enforcement officials as prescribed in §327.26." For safety reasons (e.g., proximity of homes and buildings, presence of non-hunting recreational users), hunting is not allowed on much of the land and waters associated with Corps water resources projects. Hunting is often restricted to those project areas designated for wildlife purposes. While state hunting and wildlife laws apply in these areas, Corps rangers do not enforce these state laws.

According to 36 C.F. R. 327.25, persons designated by the District Commander (i.e., Corps rangers) can write citations for violations of the recreation regulations. The citation can require "any person charged with the violation to appear before the United State Magistrate within whose jurisdiction the affected water resources development projects is located"; the violation "may be punished by a fine of not more than $5,000 or imprisonment for not more than six months or both."[6]

---

[5] The National Park Service receives approximately 285 million recreation visits annually.

[6] The punishment does not apply to failure to pay authorized recreation use fees, and is decided by the Magistrate.

## Proposed Corps Firearms Legislation

Proposed legislation—H.R. 2046, the Recreational Lands Self-Defense Act; Section 113 of H.R. 2609, the Energy and Water Development and Related Agencies Appropriations Act of FY2014 (which are all substantively similar); Section 103 of S. 1335, the Sportsmen's Act;[7] and an amendment proposed, but not adopted, during floor consideration of S. 601, the Water Resources Development Act—would ban the Secretary of the Army from promulgating or enforcing regulations that prohibit individuals from possessing firearms (including assembled or functional firearms) at Corps projects. The proposed language would require that possession comply with state law, and that the individual not be otherwise prohibited from possessing firearms. H.Rept. 113-135, which accompanies H.R. 2609, includes direction to the Corps to produce within 90 days of enactment a report on an implementation plan to align Corps policy with the proposed firearms policy. The plan is to address statutory, regulatory, budgetary, and other policy issues related to alignment of policy.

Enactment of the proposed language would allow private individuals to carry loaded and/or concealed firearms at all Corps projects. Individuals would bear responsibility for knowing and complying with all applicable concealed carry laws of the state or states where the water resources development project is located. The proposed legislation does not distinguish between handguns and other firearms, such as long guns (rifles and shotguns). The proposed legislation is similar to language enacted for the Department of the Interior in 2009 under Section 512 of P.L. 111-24, the Credit Card Accountability Responsibility and Disclosure Act of 2009. P.L. 111-24 made it legal for individuals to possess firearms at National Park Service (NPS) and National Wildlife Refuge System (NWRS) units.[8]

Supporters of the proposed legislation see enactment as part of a larger, ongoing effort to improve the consistency of laws and regulations concerning firearms on federally managed lands. They also see the proposed legislation as providing for consistent treatment of open and concealed firearms possession within a state, providing for recreational shooting and self-defense, and protecting the right to bear arms under the Second Amendment of the Constitution. Other stakeholders raise concerns that the proposed legislation ignores implementation challenges at Corps projects that are not generally faced at NPS and NWRS units (e.g., presence of critical facilities, limited law enforcement authority) and that it may produce unintended public safety and infrastructure security issues. The Administration has taken no official position on the proposed legislation.

---

[7] S. 1335 has numerous provisions related to federal lands and firearms. Only §103 explicitly relates to Corps projects. No expressions of intent to have other sections of the bill apply to the Corps have been made; perspectives on whether other sections of the bill apply to the Corps may depend largely on the interpretation of whether the Corps is included within the bill's definition of "Federal public land." This report discusses only §103 of the bill.

[8] The law did not change existing regulatory prohibitions on the use of firearms at these units (36 C.F.R. §2.4).

# Corps Firearms Policy and Related Security and Safety Issues

## Public Access to Critical Facilities

The Corps and the U.S. Department of Homeland Security regard some Corps infrastructure as critical to homeland security and the economy;[9] these structures include multi-purpose dams and major navigation locks. Many of these facilities require additional protection measures in times of heightened homeland security concerns. Currently, public access and recreation is allowed at or near many of these structures. At issue is whether proposed legislation (particularly given the Corps' limited law enforcement authority) may complicate or hamper the Corps' ability to maintain the security of these facilities.[10]

Proposed legislation does not address the Corps' authority to restrict firearms at Corps facilities. Existing regulations (36 C.F.R. §327.12) delegate authority to the Commander of the Corps District in which a project is located to close or restrict portions of a project as necessitated, including for public safety. The implication of proposed legislation for the Corps' ability to prohibit firearms in restricted areas is unclear. If the proposed legislation is enacted, the Corps may need to review safety and security vulnerabilities at its projects and may restrict public access and recreation in more areas if it cannot restrict the public's ability to carry loaded firearms.[11]

## Law Enforcement Authority[12]

While Congress has given the Corps authority to regulate conduct at its projects, it has not provided the Corps with authority to perform many typical law enforcement functions, including the ability of rangers to carry firearms, make arrests, and execute search warrants.[13] Part of the

---

[9] Department of Homeland Security, Office of Inspector General, *DHS Risk Assessment Efforts in Dams Sector*, OIG-11-110, Washington, DC, September 2011, http://www.oig.dhs.gov/assets/mgmt/oig_11-110_sep11.pdf.

[10] 18 U.S.C. §930 restricts firearms at federal facilities; "federal facility" is "a building or part thereof owned or leased by the federal government, where Federal employees are regularly present for the purpose of performing their official duties." Many Corps facilities, such as locks, dams, levees and exposed hydropower elements, may not qualify as a building. Enforcement of 18 U.S.C. §930 is beyond the limited authority of Corps rangers.

[11] As previously noted, H.Rept. 113-135 accompanying H.R. 2609 would direct the Corps to produce an implementation plan with identified actions to align Corps policy with the proposed changes to Corps firearms policy. Some safety and security issues may be interpreted as within the scope of the requested study. However, H.Rept. 113-135 does not specifically require the requested report to address safety and security policy issues or to include a safety and security assessment and action plan.

[12] There is no single all-purpose definition of a law enforcement officer; rather, Congress specifically authorizes agencies to designate officials to perform certain law enforcement functions. After reviewing various law enforcement authorization statutes, the Government Accountability Office identified four statutorily authorized functions typically performed by law enforcement officers. The functions are (1) to conduct criminal investigations; (2) to execute search warrants; (3) to make arrests; and (4) to carry firearms. See Government Accountability Office, *Federal Law Enforcement: Survey of Federal Civilian Law Enforcement Functions and Authorities*, GAO-07-121, Dec. 2006, http://www.gao.gov/new.items/d07121.pdf.

[13] The vast majority of Corps personnel, and of particular importance Corps rangers, are civilians (22,600 civilians to 300 military personnel), with few if any military officers regularly present at Corps water resources projects. The civilian nature of Corps law enforcement at water resources projects alleviates most concerns related to military personnel enforcing domestic law.

way that the Corps has maintained public safety and infrastructure security at its projects with this limited law enforcement authority has been to restrict the public's authority to carry loaded firearms. While some stakeholders may view the ability to possess loaded firearms as expanding law enforcement challenge at Corps projects, proponents of the proposed legislation may view the limitations on the Corps' law enforcement authorities as a reason for private individuals to be able to carry loaded firearms for self-defense.

The Corps' limited law enforcement authority contrasts with the authority that Congress has explicitly granted to the Department of the Interior. DOI has authority to designate officers with the full range of law enforcement functions. Thus, when P.L. 111-24 made it legal for individuals to possess firearms at NPS and NWRS units, public safety and security at those sites could be enforced by personnel with the full range of law enforcement functions, including the authority to carry arms, make arrests without warrants, execute warrants, and conduct investigations.[14]

In contrast, Congress has limited enforcement by Corps rangers to issuing citations for violations of regulations.[15] Corps rangers principally have land management functions with duties related to recreation and natural resources management (e.g., fisheries and wildlife biologist, and forester).

Full police power at Corps projects, including the power to enforce state and local laws and place persons under arrest, is solely exercised by state and local authorities. Consequently, the Corps relies on the assistance and cooperation of local and state law enforcement through cooperative agreement or contracts during peak visitation periods for maintaining public safety. The Corps' contract authority for these law enforcement services nationally (42 U.S.C §1962d-5d) is limited to $10 million annually. Current Corps authority does not allow the agency to authorize state or local authorities to enforce federal law or regulations, such as federal firearms law, at Corps projects.

The proposed legislation, if enacted, would make no change to law enforcement authorities for the Corps. No armed federal law enforcement authorities responsible for maintaining public safety and security would be at Corps projects. Corps rangers would remain unarmed, and volunteers and those working as concessionaire contractors at Corps projects also would not be allowed to carry firearms. The agency has not evaluated whether additional law enforcement assistance and funding to obtain this assistance may be needed to maintain public safety and security if private individuals are allowed to carry loaded firearms at Corps projects.

## Economic Costs and Benefits

No assessment has been made of the financial costs[16] and potential benefits associated with changes to Corps firearms policies. Costs may include

- one-time costs, such as updated signage and brochures and review of firearms-related safety and security vulnerabilities;
- periodic costs, such as public outreach and personnel training; and

---

[14] For example, see 16 U.S.C. §1a-6(b).

[15] Corps citation authority is codified at 16 U.S.C. 460d.

[16] No Congressional Budget Office cost estimate is available for the proposed legislation.

- long-term costs, such as increased number and value of contracts with local and state law enforcement.

The direct benefits of altering Corps firearms possession regulations may include changes to the recreational behavior, use, and experience at Corps projects; these changes can be challenging to quantify in economic terms. CRS found no data on anticipated recreational and use changes and associated economic benefits that may result from enactment of the proposed legislation.

## Comparison with Reclamation Firearms Policies

Like Corps projects, many of DOI's Bureau of Reclamation water resources projects are sites of both significant infrastructure and public recreation and access. Currently, Reclamation facilities are governed differently than those of the Corps with respect to the regulation of firearms and law enforcement in several important ways. **Table 1** summarizes the current and proposed firearms regulations and related public access and law enforcement authorities for Corps and Reclamation water resources projects.

Reclamation regulations (43 C.F.R. §423.30) allow firearm possession in compliance with federal, state, and local law on Reclamation lands and waterbodies, with two exceptions:

- possession is not permitted at or in a Reclamation facility (e.g; dam, building), and
- prohibitions and regulations may apply in designated special use areas.[17]

Unlike the Corps' current regulations or proposed legislation, these Reclamation regulations distinguish between lands and waterbodies (i.e., areas used for recreation) and facilities. At facilities (e.g., buildings, dams, electric power facilities, switchyards, recreation facilities, fish and wildlife facilities), firearms are prohibited. At Reclamation lands and waterbodies, firearms are allowed to the extent provided by applicable federal, state, and local law. Therefore, the possession of loaded firearms by private individuals is allowed at most of a Reclamation project's land and water footprint, whereas current Corps regulations allow such possession only at the limited areas designated for hunting and shooting at Corps projects.

Reclamation regulations (43 C.F.R. §423.30(b)) restrict discharge of a weapon unless for hunting or at an authorized shooting or archery range; discharge must also be in compliance with federal, state, and local law. Neither current Corps regulations nor the proposed legislation explicitly address the discharge of weapons. Reclamation regulations (43 C.F.R. §423.32) permit hunting on Reclamation lands and waterbodies in accordance with federal, state, and local laws unless the area has been closed for public use or has been designated as a special use area.[18] In November 2001, in Section 1 of the Reclamation Recreation Management Act of 1992 (P.L. 107-69), Congress provided criminal penalties for violation of regulations to maintain law and order and protect persons and property at Reclamation projects and lands.

---

[17] The basis for the regulations is 43 U.S.C. §373b.

[18] In order to designate an area as a special use are, according to Reclamation regulations (43 C.F.R. §423.60) an authorized official finds the designation is necessary for protection of public health and safety, protection and preservation of cultural and natural resources, protection of environmental and scenic values, scientific research, the security of Reclamation facilities, the avoidance of conflict among visitor use activities, or other reasons in the public interest.

**Table 1. Current and Proposed Firearms Regulations and Related Public Access and Law Enforcement Authorities for Corps and Reclamation Projects**

| | Reclamation Regulations and Authority | Corps Regulations and Authority | Proposed Legislation on Firearms at Corps Projects |
|---|---|---|---|
| *Unloaded Firearms* | Allowed if in compliance with federal, state, and local law | Allowed | Allowed |
| *Loaded Firearms on Lands Not Designated for Hunting or Shooting* | Allowed if in compliance with federal, state, and local law | Prohibited | Allowed if in compliance with state law |
| *Loaded Firearms at Facilities (e.g., dams)* | Prohibited | Prohibited | No limitation specified |
| *Loaded Firearms in Restricted Areas* | Restrictions and prohibitions may apply | Prohibited | No limitation specified |
| *Discharge of Weapon (e.g., hunting, shooting ranges)* | Limited to hunting (except in designated areas) or at designated shooting range in compliance with federal, state, and local law | Limited to areas designated for hunting or shooting | No limitation specified |
| *Corps or Reclamation Rangers* | - Land management functions (not law enforcement)<br>- May not carry firearms<br>- Citation authority for violation of regulations<br>- No authority to detain or arrest | - Land management functions (not law enforcement)<br>- May not carry firearms<br>- Citation authority for violation of regulations<br>- No authority to detain or arrest | No change from current authorities |
| *Other Federal Law Enforcement* | DOI personnel authorized to perform full suite of law enforcement functions | None | No change from current authorities |
| *Armed Federal Law Enforcement* | Authorized, limited use | None, no agency authority | None, no agency authority |
| *Contracting for (Armed) State and Local Law Enforcement* | - Authorized, used for security<br>- No current contracts for state or local personnel to enforce federal laws and regulations at Reclamation property | - Allowed, except not to enforce federal law or regulations<br>- Authorization of appropriations limited to $10 million annually | No change from current authorities |

**Source:** CRS.

Law enforcement at Reclamation projects can be provided by DOI armed law enforcement officers, or by other law enforcement personnel through cooperative agreement or contract. Reclamation and DOI utilize a variety of personnel for security and public safety at Reclamation projects:[19] federal special agents provided through DOI's law enforcement authority and uniformed guards acting as special policemen with law enforcement authority, an armed security response task force which does not have law enforcement authority, armed state and local law

---

[19] For example, see 16 U.S.C. §1a-6, 43 U.S.C. §373b(c), and 40 U.S.C. §1315.

enforcement personnel, and personnel from private security companies for both armed and unarmed functions. The vast majority of criminal offenses occurring on Reclamation property, nonetheless, are handled by state police, sheriff's offices, or local law enforcement.[20] Most law enforcement functions at Corps projects also are provided by state and local law enforcement authorities, but the Corps does not have the option of its own department's or agencies' armed federal law enforcement personnel. At Reclamation projects (in some contrast to NPS and NWRS units, which have federal personnel with more law enforcement functions), Reclamation rangers function much like Corps rangers; both do not have significant law enforcement authority or carry firearms.

## Conclusion

Many Corps projects function as popular recreation sites, as well as providing navigation, flood damage reduction, hydropower, and other benefits. Current Corps regulations prohibit loaded firearms by private individuals at Corps projects unless for hunting or at designated shooting ranges. Legislation has been introduced to ban promulgation and enforcement of regulations restricting firearms possession at Corps projects. Congress has enacted similar legislation language to end firearms possession restrictions on other federal lands, such as NPS and NWRS units. Related safety and security issues at Corps projects include the ability and need to restrict firearms at Corps facilities, such as dams, locks, and buildings, and the Corps' limited law enforcement authorities. While some stakeholders may view the ability to possess loaded firearms as expanding the safety challenges at Corps projects, proponents of the proposed legislation may view the limitations on the Corps' law enforcement authorities as a reason for private individuals to be able to carry loaded firearms for self-defense. A safety and security assessment of changing firearms possession regulations at Corps projects given the Corps' other authorities has not been performed. The issue before Congress is not only whether to allow private individuals to carry loaded firearms at Corps projects but also how to maintain public safety and infrastructure security at Corps projects.

## Author Contact Information

Nicole T. Carter
Specialist in Natural Resources Policy
ncarter@crs.loc.gov, 7-0854

---

[20] E-mail from Bureau of Reclamation staff to CRS (Nicole Carter), June 22, 2012.