# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

GEORGIACARRY.ORG, INC.,  )
et al.,  )
  )
      Plaintiffs,  )  CIVIL ACTION FILE NO.
  )
      v.  )  4:14-CV-139-HLM (consolidated
  )  with 4:15-CV-0009-HLM)
U.S. ARMY CORPS OF  )
ENGINEERS et al.,  )
  )
      Defendants.  )

## REPLY BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................1

   I.   The Army Corps' Firearms Regulation Does Not Burden Conduct
Protected by the Second Amendment ............................................2

   II.  In Any Event, the Army Corps Regulation Readily Withstands
Intermediate Scrutiny ...................................................................5

       A. At Most, Intermediate Scrutiny Applies to the Challenged
Regulation ...............................................................................5

       B. The Firearms Regulation Satisfies the Appropriate Level of
Review ...................................................................................10

       C. Because Plaintiffs' As-Applied Challenge to the Firearms
Regulation Lacks Merit, They May Not Assert a Facial
Challenge ...............................................................................19

CONCLUSION ....................................................................................20

## INTRODUCTION

Defendants' opening brief showed that Defendants are entitled to summary judgment because the U.S. Army Corps of Engineers' ("Army Corps") restriction on firearms possession on its property does not affect conduct within the Second Amendment's scope and, in any event, would survive any appropriate level of constitutional means-end scrutiny.   As demonstrated below, Plaintiffs' opposition brief does nothing to dispel these conclusions.  The Court should therefore enter judgment for Defendants.

## ARGUMENT

Plaintiffs argue that 36 C.F.R. § 327.13, which restricts the possession of firearms on certain Army Corps property (the "Firearms Regulation"), violates the Second Amendment because the individual plaintiffs wish to arm themselves when they visit Corps-managed lands in Georgia.  This argument has no merit. Defendants' opening brief showed that this claim involves conduct that falls outside the scope of the Second Amendment's protection.  Mem. Supp. Def. MSJ at 6-16 (Docket Entry No. 45-1) ("Def. MSJ").  In any event, as Defendants' opening brief explained, the Firearms Regulation passes muster under any applicable level of constitutional scrutiny.  *Id*. at 16-27.

## I.     The Army Corps' Firearms Regulation Does Not Burden Conduct Protected by the Second Amendment.

As Defendants' opening brief demonstrated, because the Firearms Regulation is a "law[] forbidding the carrying of firearms in [a] sensitive place[]," *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), it addresses conduct that falls outside the scope of the Second Amendment's protection.  Def. MSJ at 6-16; *see also GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 38 F. Supp. 3d 1365, 1371-76 (N.D. Ga. 2014) ("*GeorgiaCarry II*"), *aff'd*, 788 F.3d 1318 (11th Cir. 2015) ("*GeorgiaCarry III*").  Plaintiffs' counterarguments lack persuasive force.  *See* Pl. Opp. to Def. MSJ at 4-8 (Docket Entry No. 55) ("Pl. Opp.").

First, Plaintiffs mistakenly contend that the Firearms Regulation affects protected conduct on the theory that Plaintiffs' possession of firearms inside their camping tents is equivalent to the possession in a home protected in *Heller*.  Pl. Opp. at 5.  However, the respondent in *Heller* did not purport to be seeking the right to possess a firearm on government property, but simply "the right to render a firearm operable and carry it about his *home* in that condition only when necessary for self-defense."  554 U.S. at 576 (emphasis added).  Indeed, the Court "went to great lengths to emphasize the special place that the home – an individual's *private property* – occupies in our society." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1259 (11th Cir. 2012) ("*GeorgiaCarry I*") (emphasis added) (citing 554 U.S.

2

at 628-29).  A person who owns his or her own private home has the right to exclude others from entering and using that property, which is "perhaps the most fundamental of all property interests."  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 539 (2005).  By contrast, a person who sets up a temporary tent on public property lacks such a right because he or she lacks a proprietary interest in the land on which the tent is staked.  And because a temporary tent on public property is not equivalent to private ownership of a home with a right to exclude, it should not be treated as equivalent to a person's home for constitutional purposes.

Second, Plaintiffs argue that the Army Corps property cannot be considered a "sensitive place[]" under *Heller* because it is not a school or a government building.  Pl. Opp. at 5-7.  But *Heller* clearly stated that "nothing in [its] opinion should be taken to cast doubt on [*inter alia*,] laws forbidding the carrying of firearms in sensitive places *such as* schools and government buildings," 554 U.S. at 626 (emphasis added), and characterized such laws as "presumptively lawful regulatory measures."  *Id*. at 627 n.26.  Plaintiffs' position thus finds no support in *Heller*, which nowhere suggested that the sensitive places the Court described were limited to indoor spaces.  Indeed, several courts have upheld restrictions on firearms in sensitive places, including outdoor areas.  *See* Def. MSJ at 10 n.5; *see also Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1125-26 (10th Cir. 2015) (holding

3

that Postal Service parking lot was a "sensitive place"), *cert. denied*, __ S. Ct. __,

84 U.S.L.W. 3346 (2016); *United States v. Dorosan*, 350 F. App'x 874, 875 (5th

Cir. 2009) (upholding firearms prohibition on Postal Service parking lot).

Furthermore, Plaintiffs' contention that Defendants "provide[] no support for

[the] conclusion" that the property at issue is sensitive, Pl. Opp. at 6, is not correct.

As Defendants' opening brief established, the Army Corps recreational facilities at

issue here are located in the vicinity of sensitive dam construction projects.  See

Def. MSJ at 10 (quoting *GeorgiaCarry II*, 38 F. Supp. 3d at 1372-73).[1]  Nor does

the presence of hunting and sport shooting on Army Corps property undermine the

land's status as a sensitive place.  Pl. Opp. at 7; *see also id*. at 10.  The individual

plaintiffs do not seek to carry firearms in designated hunting or sport shooting

areas, which are distinct from recreational areas, but rather challenge the Army

Corps' ability to regulate firearms on other portions of its property.  *See* Compl.

¶¶ 22, 26 (Docket Entry No. 1); Compl., No. 4:15-CV-0009-HLM, ¶¶ 17, 25, 29

(Docket Entry No. 1); *see also infra* pages 13-14.  The presence of designated

hunting and sport shooting areas does not therefore compromise the Army Corps'

ability to detect threats posed by armed visitors on its recreational facilities.

---

[1] Contrary to Plaintiffs' argument, *see* Pl. Opp. at 7, the mere fact that these Army
Corps infrastructure projects are located some distance away from recreational
facilities does not diminish the status of recreational facilities as sensitive places.

In sum, the Firearms Regulation does not affect conduct protected by the Second Amendment.  The Court should therefore enter judgment for Defendants.

## II.    In Any Event, the Army Corps Regulation Readily Withstands Intermediate Scrutiny.

Defendants' opening brief explained that even if the Court were to conclude that the Firearms Regulation implicates conduct protected by the Second Amendment, Plaintiffs' challenge would still fail because the restriction on firearms possession on recreational lands owned and managed by the Army Corps passes constitutional muster under any applicable level of scrutiny.  Def. MSJ at 16-27.  Though Plaintiffs argue otherwise, Pl. Opp. at 8-18, their counterarguments are not persuasive.

### A.    At Most, Intermediate Scrutiny Applies to the Challenged Regulation.

Even assuming that the Firearms Regulation affects conduct protected by the Second Amendment, this Court should apply, at most, intermediate scrutiny in evaluating the Regulation's constitutionality.  *See* Def. MSJ at 16-19.  Though Plaintiffs argue for the application of strict scrutiny, Pl. Opp. at 8-9, the sole authority cited by Plaintiffs does not support such an application here.  In *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), in the course of deciding the level of constitutional scrutiny to apply to a Second Amendment challenge, the Seventh

5

Circuit analogized to standards utilized in free-speech cases and election-law cases.

*Id*. at 706-08.  As to the former set of cases, the Court observed:

> In free-speech cases, the applicable standard of judicial review depends on the nature and degree of the governmental burden on the First Amendment right and sometimes also on the specific iteration of the right.  For example, content-based regulations are presumptively invalid, and thus get strict scrutiny, which means that the law must be narrowly tailored to serve a compelling governmental interest. Likewise, laws that burden political speech are subject to strict scrutiny.  On the other hand, time, place, and manner regulations on speech need only be reasonable and justified without reference to the content of the regulated speech.

*Id*. at 707 (citations and internal punctuation omitted).  Citing *Ezell*, Plaintiffs argue for the application of strict scrutiny here by characterizing the Firearms Regulation as "'content-based' regulation."  Pl. Opp. at 9.  Initially, however, as Plaintiffs themselves recognize, *Ezell* merely asserted an "analogy to First Amendment jurisprudence," *id*.; the Seventh Circuit did not import that jurisprudence's distinction between content-based and time-place-manner regulations into the Second Amendment context.  Indeed, courts of appeals have been justly "hesitant to import substantive First Amendment principles wholesale into Second Amendment jurisprudence."  *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 91-92 (2d Cir. 2012); *see also Hightower v. City of Boston*, 693 F.3d 61, 80 (1st Cir. 2012) (declining to apply First Amendment prior restraint and overbreadth doctrines to a Second Amendment claim); *United States v.*

6

*Marzzarella*, 614 F.3d 85, 97 n.15 (3d Cir. 2010) ("While we recognize the First Amendment is a useful tool in interpreting the Second Amendment, we are also cognizant that the precise standards of scrutiny and how they apply may differ under the Second Amendment.").

In any case, even if Plaintiffs' analogy were instructive, it would further support the application of no more than intermediate scrutiny here because the Firearms Regulation is a "place" restriction on firearms possession, applicable only on Army Corps recreational lands. *See GeorgiaCarry III*, 788 F.3d at 1326 (recognizing that the Firearms Regulation "is narrowly cabined to a specific area, and in this case that area is specifically designated for recreation," and that the individual plaintiffs "can freely exercise their right to bear arms for self-defense elsewhere, whether in the home or on the streets, without running afoul of this regulation"). As another Seventh Circuit decision has recognized, "when a state bans guns merely in particular places, such as public schools, a person can preserve an undiminished right of self-defense by not entering those places; since that's a lesser burden, the state doesn't need to prove so strong a need." *Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012); *see also Bonidy*, 790 F.3d at 1126 ("If Second Amendment rights apply outside the home, we believe they would be measured by the traditional test of intermediate scrutiny."). Moreover, applying

intermediate scrutiny here gains further support from the decisions of courts

addressing restrictions on firearms possession outside the home – such as the

Firearms Regulation – almost uniformly declining to apply a standard above

intermediate scrutiny.  *See* Def. MSJ at 18 n.8 (citing cases).

Additionally, Plaintiffs misplace their reliance on *United States v. Grace*,

461 U.S. 171 (1983), which held that a ban on the display of any flag, banner, or

device "designed or adapted to bring into public notice any party, organization or

movement," *id*. at 172-73, could not be applied to sidewalks outside the U.S.

Supreme Court consistently with the First Amendment.  *Id*. at 177-84.  The holding

in *Grace* turns on the application of the "public forum" doctrine under the First

Amendment's Free Speech Clause.  *See id*. at 177-80.  Under this analysis, "the

extent to which the Government can control access depends on the nature of the

relevant forum."  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S.

788, 800 (1985).  Regulation of speech activity on government property (i) that has

traditionally been open to the public for expressive activity, such as public streets

and parks, and (ii) that the government has expressly dedicated to speech activity,

are subject to a stringent level of review.  *Perry Educ. Ass'n v. Perry Local

Educators' Ass'n*, 460 U.S. 37, 45 (1983).  However, Plaintiffs cite no case – and

Defendants are not aware of any – that has imported the First Amendment's

"public forum" doctrine into Second Amendment jurisprudence.  *See United States v. Chester*, 628 F.3d 673, 687 (4th Cir. 2010) (Davis, J., concurring in the judgment) (noting that *Heller*'s limited references to the First Amendment are "hardly an invitation to import the First Amendment's idiosyncratic doctrines wholesale into a Second Amendment context, where, without a link to expressive conduct, they will often appear unjustified").  But even in the First Amendment context, the Supreme Court has made clear that "the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated."  *Perry Educ. Ass'n*, 460 U.S. at 46.

Moreover, even in the First Amendment context – and contrary to Plaintiffs' argument, *see* Pl. Opp. at 17 – that conditions under which a property owner permits a visitor access to its lands may affect the visitor's constitutional rights does not change the analysis.  *See Cornelius*, 473 U.S. at 799-800 ("Even protected speech is not equally permissible in all places and at all times.  Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.").

9

In sum, if the Court elects to apply a constitutional means-end analysis to the Firearms Regulation, it should apply no more than intermediate scrutiny.

### B.  The Firearms Regulation Satisfies the Appropriate Level of Review.

Defendants' opening brief demonstrated that the Firearms Regulation satisfies intermediate scrutiny because it relates substantially to the government's important – indeed, compelling – interest in protecting visitors to its recreational facilities from the risk of firearms violence, *see United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010) (en banc), and preserving peace and public safety.  Def. MSJ at 19-27.  Plaintiffs respond with five primary counterarguments, Pl. Opp. at 10-17, none of which cast doubt on the conclusion that Defendants have satisfied this burden.[2]

_____

[2] Plaintiffs also mistakenly contend that Defendants' burden under intermediate scrutiny must include a showing that allowing the individual plaintiffs to possess firearms on Army Corps property "creates such genuine and serious risks to public safety that prohibiting [possession] is justified."  Pl. Opp. at 11 (quoting *Ezell*, 651 F.3d at 709).  However, in the quoted portion of *Ezell*, the Seventh Circuit was not characterizing the applicable burden under intermediate scrutiny, but under a higher burden.  *See Ezell*, 651 F.3d at 708-09 ("In *Skoien*, we required a 'form of strong showing' – a/k/a 'intermediate scrutiny' – in a Second Amendment challenge to a prosecution under 18 U.S.C. § 922(g)(9), which prohibits the possession of firearms by persons convicted of a domestic-violence misdemeanor . . . . All this suggests that a *more rigorous showing* than that applied in *Skoien* should be required [here], if not quite 'strict scrutiny.'") (quoting *Skoien*, 614 F.3d at 641) (emphasis added).  As explained below, because the present case is

10

First, Plaintiffs argue that the Firearms Regulation is impermissible because it reflects a uniform Army Corps policy rather than one that analyzed Plaintiffs' particularized circumstances.  Pl. Opp. at 10-11.  But this is akin to the rejected argument of the gun owner in *Bonidy* – who challenged a regulation prohibiting storage and carrying of firearms on postal property – that "the [U.S. Postal Service ("USPS")] should have devised site-specific safety policies to compensate for customers' desire to carry firearms at post offices in rural areas like Avon[, Colorado]."  *Bonidy*, 790 F.3d at 1127.  The Court of Appeals rejected this argument, explaining that "[i]ntermediate scrutiny does not require a perfect fit between a rule's objectives and the circumstances of each individual subject to the rule."  *Id*.  Rather, it held, "the USPS is not required to tailor the safety regulations to the unique circumstances of each customer" because "[t]o require the USPS to tailor a separate gun policy for each of its properties or indeed for its many diverse customers would present an impossible burden not required by the intermediate scrutiny test."  *Id*.  In concluding that the Postal Service "may create and enforce a single, national rule regarding carrying firearms onto postal property," the Tenth Circuit acknowledged that "[s]uch regulations will inevitably impact some

distinguishable from *Ezell*, if the Court elects to apply means-end scrutiny here, it should apply no more than intermediate scrutiny.

individuals more than others."  *Id*. at 1128.  But such a uniform rule was

nevertheless constitutionally permissible:

> [A]n alternative system involving piecemeal exceptions and
> individual waivers would be wasteful and administratively
> unworkable, and would raise entirely new problems related to
> fairness, official discretion, and equal administration of the laws.
> There is no reason to believe that a regulatory regime in which ad hoc
> exceptions are made for people like Mr. Bonidy would be superior, as
> a matter of sound policy or constitutional law, to a single bright-line
> rule such as the regulation challenged here.  Under a more nuanced or
> discretionary regime, problems of perceived unfairness or
> unreasonableness – and accompanying litigation – would likely
> multiply, not disappear.

*Id*.

Plaintiffs here are in virtually the same position as the plaintiff in *Bonidy*,

asserting that only "a regulatory regime in which ad hoc exceptions are made for

people like" themselves is constitutionally permissible, rather than "a single bright-

line rule such as the regulation challenged here."  However, the Tenth Circuit

roundly rejected this assertion: "We do not second-guess the wisdom of the

USPS's determination that its business operations will be best served by a simple

rule banning all private firearms from postal property; our role is limited to

inquiring whether that rule violates the Constitution, and we conclude that it does

not." *Bonidy*, 790 F.3d at 1128.[3]  For similar reasons, the Army Corps' Firearms

Regulation passes constitutional muster here.

Second, Plaintiffs challenge the Firearms Regulation based on a hypothetical

argument involving a "duck hunter" possessing a firearm at the same location

where, they assert, the individual plaintiffs wish to possess firearms.  Pl. Opp. at

11-12.  This challenge is meritless because Plaintiffs fail to identify any portion of

the recreational facilities of the two Army Corps properties that either Plaintiff

James or Barrs wishes to visit on which hunting is permitted.  *See* Compl., ECF

No. 1, ¶¶ 18, 22 (Plaintiff James alleges that several weeks each year, he camps in

a tent on the McKaskey Creek Campground); *compare* SAM AR 1312 (showing

location of McKaskey Creek Campground) *with* SAM AR 1353-1362 (showing

locations of designated hunting areas within Lake Allatoona property; *see* Compl.,

No. 4:15-CV-0009-HLM, ECF No. 1, ¶¶ 24-25 (Plaintiff James alleges that he uses

---

[3] It is similarly meritless to argue, as do Plaintiffs, that the Army Corps must "take
into account that Plaintiff Barrs has a Georgia weapons carry license."  Pl. Opp. at
11.  The plaintiff in *Bonidy*, too, had a "licensed concealed-carry permit under
Colorado law."  790 F.3d at 1127.  But "[t]here is no national registry of firearms
carry permits" and "[g]un carry laws differ in different states and localities, and
such laws vary widely in their requirements and level of enforcement."  *Id*.
Therefore, "[c]onsistent with the Supremacy Clause, the USPS and other federal
agencies need not stop every customer at the government's property lines to
inquire whether each has a valid, active firearms license under state and local law."
*Id*.  The same is true here with respect to persons recreating on lands owned and
managed by the Army Corps.

the recreational facilities at Mistletoe State Park during the summer months); SAS AR 1505 (description of Mistletoe State Park includes no mention of hunting areas).[4]  Plaintiffs' hypothetical argument is premised on a misunderstanding of the Firearms Regulation because even a visitor who may possess a loaded firearm for hunting may do so only within a designated hunting area.  *See* 36 C.F.R. 327.13(a)(2).  And the fact that the Army Corps permits persons visiting Corps-owned and -managed areas specifically dedicated for hunting does not undermine the Army Corps' determination that restricting possession of firearms in recreational areas relates substantially to its important – indeed, compelling – interest in protecting public safety and preventing threats to critical infrastructure.

Third, Plaintiffs express a preference that visitors to Army Corps recreational facilities be permitted to possess firearms in the event of crime.  Pl. Opp. at 13-14.  But the Army Corps is justified in reaching a different conclusion: namely, that in light of factors such as the high density of use of Army Corps recreational facilities, potential sources of conflict among visitors (which may be exacerbated by the use of alcohol), and limitations on the Army Corps' ability to

---

[4] *See also*
http://www.sas.usace.army.mil/About/DivisionsandOffices/OperationsDivision/JStromThurmondDamandLake/PlanaVisit/Hunting.aspx (listing hunting areas within J. Strom Thurmond Dam and Lake, and noting that "Mistletoe State Park area is off limits to hunting) (last visited March 28, 2016).

14

police its own property, restricting visitors' authority to carry loaded firearms helps the Army Corps maintain public safety and infrastructure security at these facilities. *See* Def. MSJ at 20-24. Moreover, the Firearms Regulation is similar to other federal statutes and regulations that restrict the carrying of firearms on government property. *See id.* at 25-26. The Army Corps acted well within constitutional limits when it determined that the dangers inherent in permitting visitors to Army Corps-managed lands to possess loaded firearms would be inconsistent with the recreational uses to which those lands are reserved.

Fourth, Plaintiffs incorrectly attempt to conflate the Army Corps regulation with the broad prohibition on handgun possession in one's home found objectionable in *Heller*. Pl. Opp. at 14, 15-16. Initially, the District of Columbia enacted the law found impermissible in *Heller* in its regulatory capacity, not in its capacities as a proprietor of land it owned and managed. Here, by contrast, the government is exercising authority as a property owner. In Georgia, private property owners may prohibit the possession of firearms on their property. *See* Ga. Code Ann. § 16-11-127(c). This right extends even to persons in legal control of private property through a lease or rental agreement. *Id.* The Constitution does not require a different result with respect to guests temporarily staying on property

owned and managed by the Army Corps.  *See GeorgiaCarry II*, 38 F. Supp. 3d at 1373-74.

Moreover, as explained above, the District law was held unconstitutional because it banned the possession of handguns in the home.  *See Heller*, 554 U.S. at 635 ("In sum, we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense."). And as the Eleventh Circuit has recognized, *Heller* "involved [a] vastly broader firearms regulation[] than the restriction at issue here."  *GeorgiaCarry III*, 788 F.3d at 1325.  That is because "[t]he Corps' firearms regulation . . . is narrowly cabined to a specific area, and in this case that area is specifically designated for recreation.  The plaintiffs can freely exercise their right to bear arms for self-defense elsewhere, whether in the home or on the streets, without running afoul of this regulation."  *Id*. at 1326.  In short, "[t]he Corps' firearms regulation does not reach nearly as far as the regulations at issue in *Heller* . . . , and the plaintiffs cannot prevail simply by arguing that this case must reach the same result."  *Id*.; *see also id*. at 1326 n.8 (distinguishing cases involving "licensing regimes that regulated the carrying of handguns throughout the District [of Columbia], not cabined to specific recreational areas").

16

Similarly, Plaintiffs misplace their reliance on *Ezell* and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), neither of which supports their arguments here. *See* Pl. Opp. at 15-16. As the Court has noted, the claim alleged in *Ezell* stemmed from an unusual regulatory combination: "a Chicago law banned residents from possessing firearms, even in the home, without first completing at least one hour of firing range training[; h]owever, that same law banned firing ranges throughout the city." *GeorgiaCarry II*, 38 F. Supp. 3d at 1374 (citations and internal punctuation omitted). "Consequently, though the *Ezell* Plaintiffs were technically challenging Chicago's ban on firing ranges, that ban also burdened Chicago residents' ability to possess firearms in their homes." *Id.* "No such burden is at issue with the instant Firearms Regulation." *Id.* Furthermore, contrary to Plaintiffs' implication, the Supreme Court's holding in *McDonald* did not invalidate any law; rather, in that case, the Court incorporated the Second Amendment right recognized in *Heller* to apply to the States, without opining on the constitutionality of the firearms laws at issue in the case. *See* 561 U.S. at 791 (plurality opinion) (holding that the Fourteenth Amendment's Due Process Clause incorporates the Second Amendment right recognized in *Heller*, and remanding for further proceedings).

Finally, Plaintiffs mistakenly contend that the Firearms Regulation cannot be considered an exercise of the Army Corps acting in its proprietary capacity

17

because the Regulation may be enforced through criminal penalties.  Pl. Opp. at

16-17.  As an initial matter, even trespassers on private land may be subject to

criminal penalties.  More importantly, however, Plaintiffs' contention cannot be

squared with the Supreme Court's decision in *United States v. Kokinda*, 497 U.S.

720 (1990), which considered a U.S. Postal Service regulation that also carried

with it criminal penalties.  *See id.* at 724 ("Respondent Kokinda was fined $50 and

sentenced to 10 days' imprisonment; respondent Pearl was fined $100 and received

a 30-day suspended sentence under that provision.").  The existence of these

penalties, however, did not prevent the Court from concluding that in enforcing the

regulation, the government was acting in its proprietary capacity.  *See id.* at 725-

26.  Nor can Plaintiffs' contention be squared with *Bonidy* and *Dorosan*, both of

which considered Second Amendment challenges to a Postal Service firearms

restriction that also imposed criminal penalties.  *See* 39 C.F.R. §§ 232.1(l)

(restricting possession of firearms on postal property), 232.1(p) (subjecting

violators to fine and imprisonment of up to 30 days).  Both of these decisions

found that the Postal Service acted in its proprietary capacity in enforcing the

regulation.  *See Bonidy*, 790 F.3d at 1126; *Dorosan*, 350 F. App'x at 875 (Postal

Service's "restrictions on guns stemmed from its constitutional authority as the

property owner").  Consequently, the fact that the Firearms Regulation is

enforceable by criminal penalties does not remove it from the category of actions taken in the Army Corps' proprietary capacity.

In sum, Plaintiffs' arguments lack merit. The Court should therefore enter summary judgment for Defendants.

### C.  Because Plaintiffs' As-Applied Challenge to the Firearms Regulation Lacks Merit, They May Not Assert a Facial Challenge.

In addition to challenging the Firearms Regulation as applied to Plaintiffs, Plaintiffs also state that they are challenging the Regulation on its face. Pl. Opp. at 14. However, Plaintiffs fail to satisfy the demanding standard required of a claim of facial unconstitutionality. "When a plaintiff mounts a facial challenge to a statute or regulation, the plaintiff bears the burden of proving that the law could never be applied in a constitutional manner." *Am. Fed'n. of State, Cty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) (citation and internal punctuation omitted). "Put another way, 'the challenger must establish that no set of circumstances exists under which the Act would be valid.'" *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Here, as explained above, Plaintiffs have failed to demonstrate that their as-applied challenge to the Firearms Regulation is meritorious because the Regulation is constitutional as applied to Plaintiffs. Accordingly, their facial challenge must also fail. *See*

*GeorgiaCarry I*, 687 F.3d at 1266 ("Plaintiffs' facial challenge fails because the Carry Law is capable of numerous constitutional applications.").

## CONCLUSION

The Army Corps' Firearms Regulation is a "presumptively lawful" prohibition of "the carrying of firearms in sensitive places," as described in *Heller*, 554 U.S. at 626.  The Regulation thus does not burden conduct that is protected by the Second Amendment and would pass muster under any level of constitutional scrutiny in any event.  Defendants thus respectfully request that the Court enter summary judgment in their favor.

Dated:  March 31, 2016

Of Counsel

JOHN A. HORN
United States Attorney

LORI BERANEK
Assistant United States Attorney
600 Richard B. Russell Federal Building
75 Spring Street, S.W.
Atlanta, Georgia 30303
Lori.Beranek@usdoj.gov

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney
General

  /s/ Daniel Riess
JOHN R. TYLER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

20

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing document has been prepared with one of the font

and point selections approved by the Court in Local Rule 5.1B for documents

prepared by computer.


  /s/ Daniel Riess

Daniel Riess


## **CERTIFICATE OF SERVICE**

I certify that, on March 31, 2016, I electronically filed the within and

foregoing with the Clerk of Court using the CM/ECF system which will

automatically send email notification of such filing to the parties' attorneys of

record.

This 31st day of March, 2016.


  /s/ Daniel Riess

Daniel Riess